[No. 32647. Department One. March 11, 1954.]

BENSON CHANDLER, *Appellant,* v. DORAN COMPANY, *Respondent.*[1]

[1]Reported in 267 P. (2d) 907.

*McMicken, Rupp & Schweppe* and *Warren A. Doolittle,* for appellant.

*Ben C. Grosscup* and *Grosscup, Ambler, Stephan & Miller,* for respondent.

OLSON, J.—This is an appeal by plaintiff from an order dismissing his action with prejudice. Defendant's demurrer to the first cause of action in plaintiff's amended complaint was sustained, and its motion to strike the second cause of action was granted. Plaintiff declined to plead further.

In his first cause of action, plaintiff alleges that defendant corporation maintained a plant at Oakland, California, for the manufacture and servicing of marine propellers; that it advertised for a young mechanical engineer or naval architect of certain financial standing to enter its employ to learn its business and purchase its Oakland plant; that plaintiff responded to this advertisement, and entered into negotiations with defendant which continued for about three months, during which time plaintiff made two examinations of defendant's "Oakland, California Division"; that plaintiff's financial, professional, and technical qualifications were accepted by defendant; that, September 18, 1950, the parties reached an oral agreement, set forth in the pleading, granting plaintiff an option to purchase certain property from defendant upon certain terms, during the period of plaintiff's employment as manager of defendant's Oakland division, employing plaintiff for an indefinite period as manager, at a base salary of six hundred dollars a month for his services, and providing:

"*Waiver*—As an alternative to defendant's performance of the so-called 'Option' part of said contract (subparagraph (a) immediately above) defendant was to be released from its obligation under said so-called 'Option' part in consideration of the payment by the defendant to the plaintiff for plaintiff's services as Manager of an *additional* salary of $900.00 per month and, in the event such release occurred within a period of six months after plaintiff began his services as Manager, defendant was also required to pay plaintiff for traveling and moving expenses and costs of readjustment for plaintiff and family from Seattle, Washington, to Oakland, California, and return $1,000.00 each way."

Plaintiff further alleges that he served as manager of defendant's plant from September 29, 1950, to February 24, 1951, under this contract; that, during this period, he notified defendant of his election to exercise his option to purchase those assets of the Oakland division specified in the agreement, but that defendant requested a modification of one of the terms of sale, which plaintiff refused to grant; that defendant then refused to sell its plant to plaintiff in performance of the option, whereupon (February 24, 1951) plaintiff resigned as manager; that, on or about May 1, 1951, defendant sold its Oakland division to a third party; that defendant has paid plaintiff only the agreed base salary of six hundred dollars a month for five months, or a total of three thousand dollars for his services as manager; that, because of defendant's refusal to complete the sale to plaintiff in accordance with the option agreement, there is now due and owing to plaintiff "the alternative performance" under the quoted "waiver" provision of the contract, for his services as manager, the agreed additional salary of nine hundred dollars a month for five months, or a total of forty-five hundred dollars, together with plaintiff's costs of traveling and moving expenses in the sum of two thousand dollars. Plaintiff's prayer is for judgment in the sum of sixty-five hundred dollars.

In his second cause of action, plaintiff alleges that, from September 29, 1950, to February 24, 1951, he rendered personal services to defendant, at its special instance and request, as manager of its plant at Oakland, California; that the reasonable value of such services is the sum of seventy-five hundred dollars, upon which the sum of three thousand dollars has been paid; that he incurred traveling and moving expenses, at the special instance and request of defendant, of the reasonable value of two thousand dollars, no part of which has been paid. His prayer is for judgment in the sum of sixty-five hundred dollars upon his second cause of action.

Defendant has moved to dismiss this appeal. It contends that the failure of plaintiff to amend his plead-

ings within the time permitted by the Rules of Court (General Rule of Superior Court 3 (2), 34A Wn. (2d) 110), after the first memorandum decision of the trial court expressing its ruling that the demurrers to both causes of action would be sustained, resulted in a "discontinuance" of the action, and that plaintiff was then obliged to appeal. But the memorandum is not a final disposition of its subject matter by the trial court. It is not an order in the cause. It is an expression of the then opinion of the court and should be considered only as a direction to counsel in the preparation of a final order. Until a formal order is entered, the court may change its mind, as it did in this case when, upon reconsideration, it overruled defendant's demurrer to the second cause of action and granted the motion to strike it. The time within which an appeal must be perfected is computed from the date of the final order or judgment of the court, and not from the date of its memorandum decision. See *Ullom v. Renton,* 5 Wn. (2d) 319, 321, 105 P. (2d) 69 (1940), and cases cited; *State v. Goard,* 32 Wn. (2d) 705, 707 *et seq.,* 203 P. (2d) 355 (1949), and cases cited; *Becwar v. Bear,* 41 Wn. (2d) 37, 40, 246 P. (2d) 1110 (1952), and case cited. Dismissal of the appeal is denied.

■ The law of the state of California is not pleaded, and, if it governs upon the merits of this action, it is assumed to be the same as the law of the state of Washington, and will be so considered for the purposes of this decision.

. Plaintiff concedes that the "option" portion of his oral contract concerning the purchase of certain assets, which include both real and personal property, is not enforcible because of the statute of frauds. It is his position that he may recover upon his first cause of action nevertheless, because the payment of the additional salary of nine hundred dollars a month for his services as manager, is not barred by the statute of frauds. His argument is that:

"The express oral contract alleged in the first cause of action is an alternative contract and, where a contract contains two promises in the alternative, one of which is within the Statute of Frauds and one of which is not, recovery may be had for breach of that which is not."

 If the promise for the payment of money (the additional salary) by defendant in this case is a true alternative promise, it may be enforced. See 2 Corbin on Contracts 136, § 316, and cases discussed and cited. Defendant does not dispute this proposition. An alternative contract is said to be

". . . one in which a party promises to render some one of two or more alternative performances either one of which is mutually agreed upon as the bargained-for equivalent given in exchange for the return performance by the other party." 5 Corbin on Contracts 379, § 1079.

 The difficulty lies in determining whether or not the contract pleaded contains a true alternative promise. This is a problem which the text writers seem to agree is puzzling, and upon which the decided cases are in conflict. It must be solved as a question of factual interpretation, and the form of words used by the parties is not controlling. Its solution is aided by the expressions found in 3 Williston on Contracts (Rev. ed.) 2194, § 781:

"A contract may give an option to one or both parties either to perform a specified act or to make a payment; and though this form of contract cannot be used as a cover for the enforcement of a penalty, yet if on a true interpretation it appears that it was intended to give a real option (that is, that it was conceived possible that at the time fixed for performance, either alternative might prove the more desirable), the contract will be enforced according to its terms. The fact that a promise is expressed in the alternative, however, may easily be given too much weight. As the question of liquidated damages or penalty is based on equitable principles, it cannot depend on the form of the transaction, but rather on its substance. It follows that a contract expressed to be in the alternative when examined in the light of the existing facts may prove to be (1) a contract contemplating a single definite performance with a penalty stated as an alternative, (2) a contract contemplating a single definite performance with a sum named as liquidated damages as an alternative, or (3) a contract by which either alternative may prove the more advantageous and is as open to the promisor as the other. A contract may belong to the third class even though the term 'liquidated damages' is applied in the contract to one alternative. But

the fact that a contract appears from its terms to belong to the third class does not prove that it does not belong to the first. A contract that in consideration of $10,000 paid on January 1st, the promisor will at his option and as he may prefer either repay that sum on or before July 1st with 6 per cent interest or convey an absolute title to Blackacre, may be as obnoxious to equity as any mortgage or penalty. Whether this is so depends simply on whether Blackacre was or was not on January 1 worth greatly in excess of $10,300, and if a contract states that upon breach of an obligation, there shall be enforced, instead of the primary promise, a reasonable alternative mode of settlement the agreement for liquidation of the damages will be enforced."

In 5 Corbin on Contracts 883, 884, § 1213, it is said:

"If, however, the contract provides that the promisor shall have a choice or option between performances, or that on payment of a named sum his contract shall be null and void, or that for a specified payment he may regain the legal privilege of not rendering the promised performance, the contract may well be regarded as an alternative contract."

Also, see, 2 Corbin on Contracts 136, § 316; 5 Corbin on Contracts 387, 882, §§ 1082, 1213; 2 Williston on Contracts (Rev. ed.) 1308, § 448, and cases cited by these authors; 1 Restatement, Contracts, 491, 554, §§ 325, 339 comment f; Annotation, 13 A. L. R. 271; *Washington Cranberry Growers' Ass'n v. Moore,* 117 Wash. 430, 441, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077 (1921); *Asia Inv. Co. v. Levin,* 118 Wash. 620, 626, 204 Pac. 808, 32 A. L. R. 578 (1922).

In considering the pleading upon demurrer, we are obliged to construe its allegations liberally in favor of the pleader. Well-pleaded facts, with every reasonable inference from those facts, are admitted by the demurrer to be true. *Metropolitan Park Dist. of Tacoma v. Olympia Athletic Club,* 42 Wn. (2d) 179, 183, 254 P. (2d) 475 (1953), and statute and cases cited; *Mill & Logging Supply Co. v. West Tenino Lbr. Co.,* ante p. 102, 111, 265 P. (2d) 807 (1954).

Under these rules, if the demurrer is to be sustained, it must be said that the parties to the agreement did not

intend that defendant have an alternative performance, but that the alleged agreed additional salary was merely a device to assure the performance of the unenforcible option.

We are unable to reach this conclusion. We cannot say that the parties intended a single primary obligation to sell defendant's Oakland plant at plaintiff's option, and that they did not intend a real option of alternative performance by defendant. It is not certain that defendant had no real choice of performance after plaintiff exercised his option. If defendant then refused to perform the option agreement, and later barred its enforcement by its plea of the statute of frauds, we cannot say that such action was a breach of the agreement, and not the election of an alternative performance. Defendant apparently reserved the right to decide whether it would be to its best interests to honor its obligation to pay plaintiff additional salary, rather than to honor its agreement to sell the plant.

It is not pleaded that the additional salary was due to plaintiff for any additional work. We do not believe that this necessarily is fatal to the cause of action. From the pleading, it appears that the parties conducted lengthy negotiations before the oral agreement was reached. It also is apparent that the transaction was one of considerable magnitude, and of such a nature that a decision to buy or sell could not be reached by either of the parties without thorough study. From the pleading, we cannot say that the parties intended that defendant could discharge its obligation to plaintiff only by conveyance of its plant, and that they did not intend that plaintiff be compensated in an agreed amount, in the event his removal to Oakland, California, and his time and study were made idle by defendant's final decision that it would not sell the plant.

We cannot say that payment of the stipulated amount would not be equivalent to performance of the option, that is, the parties reasonably may have intended that the value of plaintiff's services to defendant were such that they could and should be compensated in one amount in the event the sale of the plant was completed, and in another amount in

the event defendant refused to sell after plaintiff decided to buy. We cannot say that the relative values of the alternatives are so disproportionate as to be unequal. If they intended that either performance would equal the consideration given by plaintiff by his services, then either performance, at defendant's election, would satisfy the contract and the enforcible provision is not coercive or penal.

Defendant elected not to perform the option agreement. Under the pleading, it then became a money debtor of plaintiff for the amount necessary to complete its other performance. The demurrer to the first cause of action should not have been sustained.

The trial court properly overruled the demurrer to the second cause of action. It granted defendant's motion to strike this cause of action because it was "sham and frivolous," that is, that it was inconsistent, in view of the court's ruling on the demurrer to the first cause of action. Our ruling upon the sufficiency of the first cause of action against the demurrer, removes the supporting reason for the order granting the motion to strike, and it must be denied. Plaintiff may plead a cause of action upon an express contract and upon *quantum meruit*. *Adjustment Department, Olympia Credit Bureau v. Brostrom,* 15 Wn. (2d) 193, 199, 130 P. (2d) 67 (1942); *Olson v. Mulder,* 38 Wn. (2d) 319, 328, 229 P. (2d) 323 (1951), and cases cited. See *Holmes v. Radford,* 143 Wash. 644, 647, 255 Pac. 1039 (1927); *Jeffs v. Stephenson,* 9 Wn. (2d) 335, 338, 114 P. (2d) 987 (1941), and cases cited.

The order dismissing the action is reversed.

GRADY, C. J., MALLERY, HAMLEY, and FINLEY, JJ., concur.