[No. 11243-1-I. Division One. July 19, 1984.]

BELLEVUE SCHOOL DISTRICT No. 405, *Respondent,* v.
G. LORRAINE BENTLEY, ET AL, *Appellants.*

*Cohn, Cohan & Strasburg, Inc., P.S., Donald G. Cohan,* and *Robert B. Spitzer,* for appellants.

*Roberts & Shefelman, Joni H. Ostergaard, Paul L. Ahern, Jr.,* and *Diane Dray Kenny,* for respondent.

RINGOLD, J.—Defendant G. Lorraine Bentley appeals a summary judgment requiring her to return $15,225.37 in sabbatical pay and benefits to the Bellevue School District. We find that Bentley is contractually required to return amounts received as salary, but need not return the amount paid as benefits. Accordingly, we reduce the judgment to $13,360.

Bentley, a certificated employee of the Bellevue School District, received a paid sabbatical leave for the 1979–80 school year. At the end of the leave Bentley requested, and was denied, further unpaid leave. She then asked for a nonteaching position because she believed that her emotional problems made it impossible for her to return to work directly with children. Joseph Watson, her school

administrator, refused to consider a reassignment and rejected Bentley's offer to work in a different capacity.

The terms of Bentley's employment, including the terms of the sabbatical, are contained in a Collective Bargaining Agreement (CBA) between the District and the Bellevue Education Association. Article 10, section 6.8 of the CBA provides:

> An employee who has been granted sabbatical leave will agree to return for at least two (2) years of regular service in the District upon the expiration of her/his leave. If the employee does not return to regular service with the District, all salary paid during the leave will become immediately due and payable to the District at the expiration of such leave, except as noted below and/or except in the case that other mutually agreeable arrangements are made between the employee and the Board.

The District asked Bentley to repay the money received during her sabbatical as required in the contract; she refused to do so.

The District filed suit, then moved for summary judgment. The parties stipulated to the "Assumption of fact for the purpose of the Summary Judgment Motion that the Defendant is suffering from an emotional disability which does not permit her to work with children in a teaching capacity." The judge found that there were no factual issues and granted the District's motion for summary judgment for $15,225.37. This appeal follows.

### Alternative Performances Contract

Bentley contends that she is not obligated to repay the money because the repayment provision is a liquidated damages clause which is triggered only if the contract is breached. Bentley claims that her performance was discharged or excused, so she did not breach her contract. She asserts summary judgment was improper because there were disputed factual issues.

The District argues that the contract contains an alternative performances clause, not a liquidated damages

clause. If Bentley is excused from returning to her teaching position, the District contends she is required to render the alternative performance of returning her salary.

In reviewing a motion for summary judgment, the appellate court engages in the same inquiry as does the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper when there is no disputed issue of material fact and the party is entitled to judgment as a matter of law. CR 56.

The parties stipulated for the purposes of the summary judgment motion that Bentley was unable to return to teaching because of her emotional problems. They agreed on the terms of the CBA, and that Bentley refused to return to her regular position but was willing to consider other employment. There is no dispute of material fact; summary judgment was appropriate.

A contract is a true alternative contract when the parties have agreed that either of two or more alternative performances is to be given by the promisor as the agreed exchange for the promisee's performance. 5 A. Corbin, *Contracts* § 1082 (1964) (Corbin). In a true alternative contract the promisee cannot compel performance of one alternative if the promisor properly elects the other. *Chandler v. Doran Co.,* 44 Wn.2d 396, 267 P.2d 907 (1954); Corbin, at 464. The difficulty, as noted in *Chandler,* is in determining whether the contract contains alternative performances or a liquidated damages clause. This "must be solved as a question of factual interpretation, and the form of words used by the parties is not controlling." *Chandler,* at 401. *See* 5 S. Williston, *Contracts* § 781 (3d ed. 1961).

A chief factor in resolving the question is whether the promisor has free choice between performances:

> If . . . the contract provides that the promisor shall have a choice or option between performances, or that on payment of a named sum his contract shall be null and void, or that for a specified payment he may regain the legal privilege of not rendering the promised performance, the contract may well be regarded as an alternative contract.

5A A. Corbin, *Contracts* § 1213 (1964), cited in *Chandler,* at 402. The *Chandler* court noted that other factors to consider include whether the promisor had a "true option" on which alternative to perform, whether the money payment is equivalent to performance of the option, and the relative values of the performances.

The choice of performances here presents a true option. At the time of contracting the teacher may not know what circumstances will arise leading to a need or desire not to return to the former teaching position. The CBA gives the teacher flexibility in making plans and choices. Bentley mischaracterizes the situation in saying that no one would ever choose to remain unemployed as opposed to returning to a "well–paying professional position." The time at which the value of the alternatives is to be judged is at the time of contracting. Corbin. At that time, the teacher may wish to retain control over future plans and decisions. The teacher receives a benefit from being given a choice whether to return to the former position or to repay the sabbatical funds.

The agreement meets the requirements of an alternative performances contract. The teacher has the choice of returning to work or returning the sabbatical funds, the District cannot compel performance, and there is a reasonable relationship between the alternatives. Either performance, at the teacher's election, satisfies the contract.

### TENDER OF PERFORMANCE

Bentley next argues that she made an adequate tender of performance in seeking reassignment to other positions in the district. She contends that the trial court erred in interpreting the contract as requiring her to return to the same position.

The District responds that the express language of the contract requires Bentley to return to the same teaching position; in failing to do so, she breached her contract obligation. The District argues that nothing in the CBA obligates it to accept substitute performances.

The CBA provides in part that the employee "will agree to return for at least two (2) years of regular service in the District". CBA art. 10, § 6.8. The agreement also states:

> An employee returning from sabbatical leave will be given the same consideration for returning to the position of her/his last assignment as if s/he had been on active duty. It will be assumed that the employee wishes to return to the position of her/his last assignment unless s/he notifies the Superintendent by 15 March, prior to the expiration of her/his leave. The District reserves the right to reassign the employee to a position which will be most advantageous to the District, but in such instances the District will confer with the returning employee before such assignment is made.

CBA art. 10, § 6.8. Bentley asserts that these provisions give the District the right to reassign her to another position, but not the right to require her to return to the same position.

 The District reserved the right to assign the employee to *any* position. Certificated employees have the right to a contract containing substantially identical terms and conditions as previously existed. *Barnes v. Seattle Sch. Dist. 1,* 88 Wn.2d 483, 563 P.2d 199 (1977). The CBA guarantees that the employee will be given the same consideration for the prior assignment as if no sabbatical had been taken. Interpreting this to require the District to award an administrative, rather than a teaching, position goes beyond the language of the agreement. The CBA is drafted to give those returning from sabbatical the same consideration as those who were not on leave; there is no indication that they are entitled to extra consideration. Bentley had the right to be considered for her former position, subject to the District's right to reassign her to its advantage. In declining to teach and asking for an administrative position, Bentley made a counteroffer, which the District was not obliged to accept. *Cf. Koller v. Flerchinger,* 73 Wn.2d 857, 441 P.2d 126 (1968). A counteroffer is not an adequate tender of performance.

We construe the phrase "regular service" and the lan-

guage of article 10, section 6.9 to mean that the parties contemplated that one returning from sabbatical would return to the "regular service" performed prior to the sabbatical, unless reassigned by the District.

### AMOUNT TO BE RETURNED

Bentley's final contention is that the terms of the CBA require repayment of the amounts paid as salary, not of the amounts paid in benefits. CBA art. 10, § 6.8. She claims salary and benefits are terms used in the CBA with different meanings: salary, for example, is paid at two–thirds during the sabbatical leave while benefits are fully paid. Bentley urges that, at most, she must return only the $13,360 paid as salary. The District argues that it is entitled to recover all the compensation paid to Bentley, including fringe benefits and salary totaling $15,225.47.

Sabbatical leave is defined in the CBA as "a leave of absence from the District with pay and benefits." CBA art. 10, § 6.1. The CBA also states that "Sabbatical leave shall be granted for a period of one (1) year and shall be compensated at two–thirds of regular salary." CBA art. 10, § 6.3. Other provisions also distinguish between salary or pay and benefits. In article 10, section 6.6 it states that employees may return to work "without any loss of pay or benefits . . ." Article 10, section 6.7 says that "All benefits available to employees . . . shall accrue . . . on sabbatical leave" and later refers to the "salary schedule." Finally, article 10, section 6.8 requires that if the employee does not return to work for the District "all *salary* paid during the leave will become immediately due and payable . . ." (Italics ours.)

The terms "salary" and "benefits" are not defined in the CBA.[1] It is therefore presumed that the ordinary dictionary meaning applies. *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982). Salary is defined as "fixed compensation paid regularly". *Webster's Third New International Dictionary* 2003 (1971). Fringe benefit is defined

---

[1]We assume that "benefits" refers to what is commonly called "fringe benefits."

as "an employment benefit (as a pension . . .) granted by an employer that involves a money cost without affecting basic wage rates". *Webster's,* at 912. While benefits may be included as part of compensation, generally benefits are considered separately from salary.

When the same word is used in different parts of a contract it is presumed that the word means the same throughout. *Holter v. National Union Fire Ins. Co.,* 1 Wn. App. 46, 50, 459 P.2d 61 (1969). The CBA uses the words "salary" and "benefits" separately in different parts of the agreement. It is presumed that this means that salary does not include benefits. The repayment provision, article 10, section 6.8, requires that "salary" be repaid. No mention is made of repayment of benefits. The required alternate performance is repayment of the $13,360 received as salary.

The Washington State Constitution article 8, section 7 prohibition against "giv[ing] any money . . . to . . . any individual" is not violated by allowing retention of the fringe benefits. The teacher supplied consideration supporting the contract by working for the school district for a sufficient period to qualify for a sabbatical.

The cause is remanded to the trial court to reduce the judgment to $13,360. Neither party shall recover costs on appeal.

DURHAM, C.J., and SCHOLFIELD, J., concur.