**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHAD MINNICK; LINDA STEPHENSON;
DONALD SCHULTZ; STEPHEN
REIMERS; COREY JELINSKI; VICTORIA
BARTLEY; CHRISTOPHER CUHEL;
KAREN GREFSRUD; RITA MCVICKER;
JOSH KELLER; GLENN REYNOLDS;
EVA GIROD, on behalf of
themselves and all those similarly
situated,

    *Plaintiffs-Appellants,*

v.

CLEARWIRE US LLC; DOES, 1
through 10,

    *Defendants-Appellees.*

No. 10-35228

D.C. No.
2:09-cv-00912-MJP
Western District of
Washington,
Seattle

ORDER
CERTIFYING
QUESTION TO
THE SUPREME
COURT OF
WASHINGTON

Filed March 29, 2011

Before: Betty B. Fletcher, Ferdinand F. Fernandez and
Jay S. Bybee, Circuit Judges.

## COUNSEL

Jonathan K. Tycko, Tycko & Zavareei LLP, Washington, District of Columbia, for the plaintiff-appellant.

Stephen M. Rummage, Davis Wright Tremaine LLP, Seattle, Washington, for the defendant-appellee.

## ORDER

This case presents an issue of Washington state contract law. We must decide whether the fees that an internet and telephone service provider charges customers who cancel service before the expiration of a fixed-term contract are (a) alternative performance provisions or (b) liquidated damages. No appellate court ruling from Washington to date provides direct guidance on the legality of such fees. Accordingly, we respectfully ask the Washington Supreme Court to exercise its discretion to accept and decide the certified question below. *See* Wash. Rev. Code § 2.60.020.

## I.   BACKGROUND

Defendant-Appellee Clearwire US LLC ("Clearwire") provides wireless internet and telephone services. Subscribers to Clearwire's services are required to enter into a Service Agreement that sets forth the terms of the subscription. Subscribers may select a month-to-month contract with no obligations beyond payment of a monthly subscription charge. Alternatively, subscribers may enter into a fixed-term Service Agreement, under which customers commit to paying for service for either one or two years. However, subscribers who choose the fixed-term contract and later cancel their service before the end of the contract term are subject to an "early termination fee" or "ETF." For customers who entered into a fixed-term Service Agreement before March 7, 2007, and then cancelled their service, Clearwire charged a flat ETF of $180. For customers who entered into a fixed-term Service Agreement on or after March 7, 2007, the ETF starts at $220, and is reduced by $5 for each month the customer remained subscribed, if the contract was for two years; or the ETF is reduced by $10 for each month the customer remained subscribed, if the contract was for one year. For subscribers to a term account under the "Clear" brand (as opposed to the "Clearwire" brand), the ETF is $120, less $4 for each full month of service after the beginning of the contract. Depend-

ing on how much time remains on the contract, the ETF charged may be more or less than the sum of the remaining monthly payments.

Plaintiffs-Appellants ("Minnick") are twelve subscribers or former subscribers to Clearwire's services. They argue that the ETF constitutes an unlawful penalty, and propose to represent a class of Clearwire customers who are similarly situated. Specifically, Minnick challenges the provision in the Service Agreement which permits Clearwire to charge customers an ETF if service is terminated before the end of the fixed contract term.

On April 12, 2009, Minnick filed an original complaint against Clearwire in Washington Superior Court for King County, seeking certification as a class action representing all Clearwire subscribers on fixed-term contracts. On May 27, 2009, Minnick filed a First Amended Complaint, alleging seven causes of action. The claim relevant to this certification order alleges that the ETFs are unlawful penalties in violation of Washington common law.

Clearwire moved on July 2, 2009 to remove the case to the United States District Court for the Western District of Washington, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). On July 23, 2009, Clearwire filed a Rule 12(b)(6) motion to dismiss all of Minnick's claims for failure to state a claim. The district court granted the motion to dismiss on February 5, 2010.

## II.   DISCUSSION

On appeal to the Ninth Circuit, Minnick contends the district court erred in holding that the ETF operated as an alternative performance provision instead of as a liquidated damages clause. Minnick argues that the ETF is a liquidated damages clause and, as such, an unlawful penalty. *See Walter Implement, Inc. v. Focht*, 730 P.2d 1340 (Wash. 1987); *Wat-*

*son v. Ingram*, 851 P.2d 761 (Wash. Ct. App. 1993). *See generally* Corbin on Contracts § 58.1 (2005); 24 Williston on Contracts § 65:1 (4th ed., 2010). By contrast, Clearwire argues that the district court is correct and that the ETF is not a liquidated damages provision, but an alternative performance provision. *See Chandler v. Doran Co.*, 267 P.2d 907 (Wash. 1954). *See generally* Corbin § 58.18; Williston § 66:106.

## A

Washington case law defines an alternative performance contract as an agreement where "a party promises to render some one of two or more alternative performances either one of which is mutually agreed upon as the bargained-for equivalent given in exchange for the return performance by the other party." *Chandler*, 267 P.2d at 910 (quoting 5 Corbin on Contracts § 1079, at 379). What distinguishes an alternative performance provision from a liquidated damages clause is that parties to an alternative performance contract "intend[ ] to give a real option" to the performing party, *id.* at 910, and do not intend for one of the options to function as "a device to assure performance of the [other] option," *id.* at 911. Whether the obligated party was given a "real option" depends on "whether the money payment [option] is equivalent to performance of the [other] option, and the relative value of the performances." *Bellvue School District No. 405 v. Bentley*, 684 P.2d 793, 796 (Wash. Ct. App. 1984). Because the relative value of the alternative performances can change over time, Washington courts instruct us that "[t]he time at which the value of the alternatives is to be judged is at the time of contracting." *Id.*

Applying this framework from Washington caselaw, we believe that the outcome of the current case is unclear. Our understanding of Washington law is that the ETF would be a valid alternative performance contract if (1) subscribers had a "real option" between remaining subscribed for the full term

or paying the ETF, and (2) there exists a reasonable relationship between the two choices. With respect to the "real option" factor, the cases do not give much guidance on what factors we should consider to determine whether subscribers have a "true option" between remaining subscribed or paying the ETF. On the one hand, the numerous subscribers to Clearwire's services might not have the same type of bargaining power enjoyed by the obligated parties in past cases, where the contracts were directly negotiated. *See*, *e.g.*, *Chandler*, 267 P.2d at 912 (noting the extensive negotiations between the parties); *Bentley*, 684 P.2d at 795 (alternative contract that permitted schoolteacher to take paid sabbatical on condition that she return to teach for two years, or repay the salary she received during the sabbatical, was directly negotiated as part of a collective bargaining agreement). On the other hand, in the mass communications field, it should not be surprising to find a standard contract. The real question is whether the contract presents Clearwire's subscribers with a "real option" between paying monthly subscriber fees through the course of the contract, or terminating the contract and paying a one-time ETF.

To determine whether a reasonable relationship between the options exists, we must compare the relative value of the alternatives. *Chandler*, 267 P.2d at 912. If the "relative values of the alternatives are so disproportionate as to be unequal," then the contract cannot be a valid alternative performance contract. *Id.* From the point of view of a subscriber who wishes to cancel, the relative value between the two options depends on how much time is left on the contract. As discussed above, the ETF in most cases decreases by $5 or $10 for every month the customer remains subscribed. Presumably, however, each monthly payment is significantly greater than either $5 or $10. Since the ETF in most cases starts out at $220 (which presumably is significantly more than a few months' worth of payments), it appears that for subscribers who cancel early into their term the ETF is *less* than the sum of the remaining monthly payments. By contrast, the ETF is

*greater* than the sum of the remaining payments for subscribers who cancel near the end of their term. In other words, early in the contract it is likely in a subscriber's economic interest to pay the ETF rather than complete the contract, while a subscriber who is near the end of his contract will have an economic incentive to complete the contract rather than pay the ETF. However, Washington courts also instruct us to judge the relative value of the performance alternatives from the point of view of the *time of contracting*, not at the time the customer elects to cancel. *Bentley*, 684 P.2d at 796. At the time of contracting, the customer presumably is not certain whether he will remain subscribed for the full term or not, although he may well be able to estimate his general options over the life of the contract. Washington cases do not provide much guidance on how to value these kind of performance alternatives.

### B

ETFs appear to be a common feature of service contracts between telecommunications companies and subscribers. But we are aware of no published decisions from Washington courts opining on whether such ETFs are alternative performance provisions or liquidated damages clauses. This case therefore presents a "question of state law . . . which has not been clearly determined and does not involve a question determined by reference to the United States Constitution." Wash. R. App. P. 16.16.

### III.   CERTIFIED QUESTION

In light of the foregoing discussion, we respectfully certify the following question to the Washington Supreme Court:

> Does Washington law treat the ETF at issue in this case as an alternative performance provision, or as a liquidated damages clause?

We do not intend the form of this question to limit the Washington Supreme Court's consideration of the issues relevant to disposing of this matter. If the Washington Supreme Court decides to consider this certified question, it may reformulate the issue in light of the parties' contentions or other relevant considerations.

## IV.   ORDER

The Clerk shall forward a certified copy of this order to the Washington Supreme Court accompanied by a copy of this court's docket of this case. Further proceedings in our court on the certified question are stayed pending the Washington Supreme Court's decision, and this case is withdrawn from submission. This panel retains jurisdiction over further proceedings upon receiving a decision from the Washington Supreme Court. The parties shall notify the Clerk within one week after the Washington Supreme Court accepts or rejects certification. If the Washington Supreme Court accepts the certified question, we designate Appellants to file the first brief before the Washington Supreme Court in accordance with Wash. R. App. P. § 16.16(e)(1). The parties shall also file a joint status report to our court every six months after the date of acceptance, or more frequently if circumstances warrant.

It is so ORDERED.