Filed 3/2/15  Stadium Promenade v. Shake It Up CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| STADIUM PROMENADE, LLC, | |
| Plaintiff, Cross-Defendant, and Respondent, | G049753 |
| v. | (Super. Ct. No. 30-2011-00516041) |
| SHAKE IT UP, LLC, et al., | O P I N I O N |
| Defendants, Cross-Complainant, and Appellants. | |


Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Reversed and remanded.

Lewis & Ham, Yoon Ham and Michael Lewis for Defendants, Cross-Complainants and Appellants.

Wendel, Rosen, Black & Dean, Kevin R. Brodehl and Dana C. Tsubota for Plaintiff, Cross-Defendant and Respondent.

\*          \*          \*

Stadium Promenade, LLC (Stadium Promenade) sued Shake It Up, LLC (Shake It Up), Petaluma Family Limited Partnership (Petaluma), and Gary Kanter (collectively, Tenants) for breach of contract, alleging Tenants failed to pay rent and other sums due under a commercial lease and guaranty. Tenants cross-complained for breach of the implied covenant of good faith and fair dealing, alleging Stadium Promenade unreasonably refused to allow Tenants to switch the restaurant franchise they operated on the leased premises after they lost the right to operate the franchise specified in the lease.

On the eve of trial, the parties settled their claims. Tenants agreed to pay Stadium Promenade $180,000 in four installments, and all parties agreed to exchange general releases. The written settlement agreement the parties later executed also stated Stadium Promenade was entitled to have a $350,000 stipulated judgment entered against Tenants if they failed to timely make any installment payment. Tenants failed to make the initial $50,000 payment and the trial court promptly entered the stipulated judgment upon Stadium Promenade's request.

We reverse. Under well established authority, including this court's opinion in *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495 (*Greentree*), the judgment constitutes an unenforceable penalty because it bears no reasonable relationship to the range of actual damages the parties could have anticipated would result from Tenants breaching the settlement agreement. In reaching this conclusion, we also reject Stadium Promenade's contention Tenants may not appeal the stipulated judgment because they agreed to it and thereby waived any objection. As explained below, courts may not validly enter a void judgment or order even if the parties agree to it.

2

I

FACTS AND PROCEDURAL HISTORY

In August 2010, Shake It Up entered into a lease (Lease) with Stadium Promenade to rent commercial real property (Property) in a large retail shopping and entertainment center in Orange, California. The Lease had a 10-year term with two five-year options, and authorized Shake It Up to operate a Shakey's Pizza (Shakey's) franchise or other business approved by Stadium Promenade. Shake It Up agreed to pay minimum monthly rent of nearly $11,000 over the Lease's first five years and nearly $17,000 over the second five years. The Lease also required Shake It Up to pay a pro rata share for advertising, real property taxes, common area expenses, and utilities. Petaluma, with Kanter acting as general partner, executed the "Guaranty of Lease" (Guaranty) guaranteeing Shake It Up's performance under the Lease.

Shortly after executing the Lease, Shake It Up began construction on the tenant improvements necessary to operate a Shakey's franchise on the Property, but in July 2011, Shakey's cancelled Shake It Up's franchise before the improvements were completed. Shake It Up notified Stadium Promenade and requested permission to operate another restaurant franchise—The Tilted Kilt—on the Property. Stadium Promenade, however, refused to approve the switch and Shake It Up was left with a 10-year lease for a commercial property on which it could not operate the only business the Lease authorized. Shake It Up soon stopped making rent payments to Stadium Promenade, and a contractor who had performed some of the unfinished tenant improvements recorded a mechanic's lien against the Property, claiming Shake It Up had failed to pay for all of the work.

After serving several notices to pay rent or quit, Stadium Promenade filed an unlawful detainer action to recover possession of the property. In December 2011, Shake It Up voluntarily surrendered possession and Stadium Promenade filed a first

3

amended complaint alleging Shake It Up breached the Lease and Petaluma and Kanter breached the Guaranty.[1]  At that time, Stadium Promenade sought nearly $128,000 in unpaid rent, damages resulting from the mechanic's lien recorded on the Property, interest, and attorneys fees.

Tenants answered the complaint and alleged numerous affirmative defenses, including that Stadium Promenade breached the Lease's implied covenant of good faith and fair dealing by refusing to allow Shake It Up to operate any restaurant other than Shakey's.  Tenants also filed a cross-complaint against Stadium Promenade and Shakey's.  After multiple successful demurrers by Stadium Promenade, Tenants' second amended cross-complaint alleged a single cause of action against Stadium Promenade for breach of the Lease based on the same conduct underlying Tenants' affirmative defense for breach of the implied covenant of good faith and fair dealing.

In December 2012, approximately one month before the trial date, Tenants made an ex parte application to continue trial and reopen discovery.  Tenants argued they needed more time to conduct discovery because they had just learned Stadium Promenade relet the Property for use as the same restaurant franchise it had refused to allow Shake It Up to operate on the Property—i.e., The Tilted Kilt.  The trial court denied Tenants' ex parte application.

In January 2013, the parties settled this action at a mandatory settlement conference.  They later executed the "Settlement Agreement and General Release" (Settlement Agreement) that required Tenants to pay Stadium Promenade a total of $180,000 in four installments—three $50,000 payments due on January 10, 2014, January 10, 2015, and January 10, 2016, and a final $30,000 payment due on January 10, 2017.  The Settlement Agreement included mutual general releases of all claims relating

---

[1]     Stadium Promenade also named Ben Kanter on the breach of guaranty cause of action, but he is not a party to this appeal.

4

to the Lease, the Property, and this action, and also stated it shall not "be construed as, and is not, an admission that the parties violated any of their duties or obligations." Finally, the Settlement Agreement stated, in the event Tenants fail to make any payment under the Agreement, "Stadium [Promenade] may request, and the Orange County Superior Court shall, pursuant to Code of Civil Procedure section 664.6, enter judgment in favor of Stadium [Promenade] pursuant to the Stipulated Judgment attached hereto as Exhibit 'B.'" Attached to the Settlement Agreement was a stipulated judgment against Tenants for $350,000, less any payments Tenants made under the Settlement Agreement.

Tenants failed to make the initial $50,000 payment in January 2014. After giving Tenants notice of the default, Stadium Promenade filed an ex parte application requesting the trial court to enter the stipulated judgment against Tenants. Citing Civil Code section 1671[2] and our decision in *Greentree*, Tenants opposed the application by arguing the stipulated judgment was an unenforceable penalty because its $350,000 amount bore no reasonable relationship to the range of actual damages the parties could have anticipated would arise from Tenants' failure to pay the first $50,000 installment under the Settlement Agreement. The trial court granted Stadium Promenade's application without explanation and entered the "Stipulated Judgment" (Stipulated Judgment) against Tenants in the full amount of $350,000. This appeal followed.

II

DISCUSSION

A.    *The Stipulated Judgment is Appealable*

Stadium Promenade contends Tenants' appeal should be dismissed because Tenants agreed to entry of the Stipulated Judgment and thereby waived all objections to it. We disagree.

---

[2]    All statutory references are to the Civil Code unless otherwise stated.

5

Under Code of Civil Procedure section 664.6, the trial court entered the Stipulated Judgment to enforce the parties' settlement because Tenants had breached the Settlement Agreement. That code section authorizes trial courts to enter judgment under the terms of a settlement the parties agreed to in writing or orally before the court. (Code Civ. Proc., § 664.6.) A judgment entered under Code of Civil Procedure section 664.6 is appealable even though the parties agreed or stipulated to the judgment. (See *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1251 ["a judgment on an order granting a motion to enforce settlement under [Code of Civil Procedure] section 664.6 is appealable"]; *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183.)

Moreover, "[Code of Civil Procedure] section 664.6 does not allow a court to endorse or enforce a provision in a settlement agreement or stipulation which is illegal, contrary to public policy, or unjust. [Citations.] Consequently, even though there is a strong public policy favoring the settlement of litigation, this policy does not excuse a contractual clause that is otherwise illegal or unjust." (*Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1127.) "'The rule is settled that the courts will not enforce a contract to perform an act prohibited by statute [citation], or by ordinance [citation].' [Citation.]" (*Ibid*.) Indeed, "a court 'may reject a stipulation that is contrary to public policy [citation], or one that incorporates an erroneous rule of law [citation].' [Citation.] The trial court has the duty to ensure that the stipulated judgment is just and cannot act as a mere puppet. [Citation.] More importantly, a court cannot validly enter a judgment or order which is void even if the parties agree to it." (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 12-13.)

As explained below, section 1671 renders contractual penalties or forfeitures illegal and unenforceable as against public policy if they bear no reasonable relationship to the actual damages caused by the breach that triggered them. (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 976-977 (*Ridgley*); *Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969, 974-975 (*Purcell*).) The public policy expressed

6

in that code section may not be waived or circumvented by language in the contract. Indeed, not even an express waiver of the right to appeal or the right to contest a stipulated judgment on any ground will prevent a party from challenging a penalty or forfeiture included in the stipulated judgment. (*Purcell*, at pp. 972, 975; see *Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896, 902 & fn. 3.) If a party could not challenge an illegal term in a contract because he or she agreed to it, all statutes and other authorities establishing prohibitions on certain types of contracts or contractual provisions would be rendered meaningless and unenforceable. That is not the law.

Stadium Promenade cites *Papadakis v. Zelis* (1991) 230 Cal.App.3d 1385, and several other cases for the proposition, "It is settled that a party cannot appeal from a judgment to which he has stipulated, as part of a settlement." (*Id.* at p. 1387; see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400; *Reed v. Murphy* (1925) 196 Cal. 395, 398-399; *Mecham v. McKay* (1869) 37 Cal. 154, 158-159; *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 604-605.) None of these cases, however, involved a challenge that a term in a stipulated judgment or contract was illegal and unenforceable. Accordingly, they do not prevent Tenants from appealing the Stipulated Judgment.

B.    *The Stipulated Judgment Constitutes an Unenforceable Penalty*

Tenants contend the trial court erred in entering the Stipulated Judgment against them because it constitutes an unenforceable penalty that illegally punishes them for failing to perform under the Settlement Agreement. According to Tenants, the Stipulated Judgment is unenforceable because it bears no reasonable relationship to the damages the parties could have anticipated would result from Tenants' failure to pay the initial installment under the Settlement Agreement. We agree.

"California law has . . . long recognized that a provision for liquidation of damages for contractual breach—for example, a preset late payment penalty—can under some circumstances be designed as, and operate as, a contractual forfeiture. To prevent

7

such operation, our laws place limits on liquidated damages clauses." (*Ridgley*, *supra*, 17 Cal.4th at pp. 976-977.) Section 1671, subdivision (b), provides, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (§ 1671, subd. (b); see *Ridgley*, at p. 977.)

"A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671[, subdivision] (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.' [Citation.] 'A penalty provision operates to compel performance of an act [citation] and usually becomes effective only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citations.]' [Citation.]" (*Ridgley*, *supra*, 17 Cal.4th at p. 977; see *Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 646 (*Jade Fashion*).)

"In short, '[a]n amount disproportionate to the anticipated damages is termed a "penalty." A contractual provision imposing a "penalty" is ineffective, and the wronged party can collect only the actual damages sustained.' [Citations.]" (*Ridgley*, *supra*, 17 Cal.4th at pp. 977-978; see *Purcell*, *supra*, 224 Cal.App.4th at p. 974 ["'Absent a relationship between the liquidated damages and the damages the parties anticipated would result from a breach, a liquidated damages clause will be construed as an unenforceable penalty'"].)

8

"A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered.  [Citation.]  A court will interpret a liquidated damages clause according to its substance, and if it is otherwise valid, will uphold it even if the parties have referred to it as a penalty."  (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 656 (*Weber*); see *Ridgley*, *supra*, 17 Cal.4th at p. 979 ["'We have consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures'"]; *Greentree*, *supra*, 163 Cal.App.4th at p. 499.) "Whether the amount to be paid upon breach of a contractual term should be treated as liquidated damages or as an unenforceable penalty is a question of law, which we review de novo."  (*Greentree*, at p. 499; see *Jade Fashion*, *supra*, 229 Cal.App.4th at p. 646.)

In *Greentree*, we applied these principles to reverse a stipulated judgment on facts virtually identical to this case.  There, the plaintiff sued the defendant for breach of contract, alleging the defendant failed to pay the plaintiff $45,000 for financial services.  The parties reached a settlement they memorialized in a stipulation for entry of judgment, which provided the defendant would pay the plaintiff $20,000 in two installments, and if the defendant failed to make either payment the plaintiff was entitled to have judgment entered against the defendant for the full amount sought in the plaintiff's complaint, including interest and attorneys fees.  The defendant failed to make the initial $15,000 payment and the plaintiff promptly asked the trial court to enter judgment against the defendant for more than $61,000, consisting of $45,000 in damages for breach of the underlying contract, nearly $14,000 in prejudgment interest, and more than $2,000 in attorneys fees and costs.  Over the defendant's objection that the judgment was excessive, the trial court entered the requested judgment.  (*Greentree*, *supra*, 163 Cal.App.4th at p. 498.)

We reversed because the judgment for more than three times what the parties agreed to in settlement of the case bore no reasonable relationship to the range of

9

actual damages the parties could have anticipated from a breach of the settlement stipulation. As we explained, "'[D]amages for the withholding of money are easily determinable—i.e., interest at prevailing rates.' [Citation.]" (*Greentree*, *supra*, 163 Cal.App.4th at p. 500.) We further explained, "the judgment would have been enforceable if it had been designed to encourage [the defendant] to make its settlement payments on time, and to compensate [the plaintiff] for its loss of use of the money plus its reasonable costs in pursuing the payment," but the judgment for $40,000 more than the $20,000 required under the settlement stipulation went well beyond compensating the plaintiff for the damages it suffered and instead impermissibly punished the defendant for failing to pay. (*Ibid.*; see *Purcell*, *supra*, 224 Cal.App.4th at pp. 975-976 [stipulated judgment for nearly $60,000 constituted illegal penalty for breach of settlement agreement requiring payment of $38,000]; *Sybron*, *supra*, 76 Cal.App.3d at pp. 899, 903 [stipulated judgment for $100,000 constituted illegal penalty for failure to make timely installment payment on $72,000 settlement].)

In *Greentree*, the plaintiff argued the amount specified in the judgment was reasonably related to the damages the plaintiff suffered based on the defendant's breach of the underlying financial services agreement. We rejected that argument because the relevant breach was the breach of the settlement stipulation, not the breach of the underlying financial services agreement. The trial court entered the judgment because the defendant breached the settlement stipulation, not because the defendant breached the underlying financial services agreement. When it entered into the settlement stipulation, the defendant released its claim for breach of the financial services agreement and the stipulation specifically declared that neither side admitted liability on that underlying claim. By entering into the settlement stipulation, the plaintiff substituted the defendant's undisputed obligation to pay $20,000 for the disputed claim based on the financial services agreement, the uncertainty of what, if anything, the trier of fact might award on that claim, and the outlay of time and money required to try the claim. Accordingly, any

10

judgment based on the settlement stipulation had to be reasonably related to the anticipated damages caused by breach of the stipulation, not breach of the underlying financial services agreement. (*Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500.)

Here, the Settlement Agreement provision authorizing entry of the Stipulated Judgment does not use the phrase liquidated damages, but its legal effect is unmistakably the same as a liquidated damages provision. (*Ridgley*, *supra*, 17 Cal.4th at p. 979; *Greentree*, *supra*, 163 Cal.App.4th at p. 499; *Weber*, *supra*, 52 Cal.App.4th at p. 656.) It predetermines the amount of damages Stadium Promenade is entitled to receive if Tenants breach their contractual obligation to make any of the four installment payments, and therefore it is not enforceable unless the Stipulated Judgment's amount bears a reasonable relationship to the amount of actual damages the parties could have anticipated Stadium Promenade would suffer if Tenants breached their obligation to make the installment payments. (*Ridgley*, at p. 977.) Nothing in the Settlement Agreement or the appellate record, however, establishes a relationship—let alone a reasonable one—between Tenants' failure to make the initial $50,000 payment and the $350,000 Stipulated Judgment. The Stipulated Judgment is seven times the amount of the payment Tenants missed. Even treating Tenants' breach as accelerating the remaining three installment payments, the Stipulated Judgment is $170,000 more than the entire amount the Settlement Agreement required Tenants to pay. *Greentree* and the other cases discussed above therefore compel the conclusion the Stipulated Judgment illegally penalizes Tenants for failing to pay, rather than compensate Stadium Promenade for reasonably anticipated damages caused by that failure. (*Greentree*, at pp. 499-500; see *Purcell*, *supra*, 224 Cal.App.4th at pp. 975-976; *Sybron*, *supra*, 76 Cal.App.3d at pp. 899, 903.)

Somewhat tellingly, Stadium Promenade makes no effort to justify the amount of the Stipulated Judgment in terms of its relationship to either the one installment Tenants failed to make or the entire amount the Settlement Agreement

11

required them to pay. Instead, Stadium Promenade contends the Stipulated Judgment is enforceable because the provision in the Settlement Agreement authorizing its entry is not a liquidated damages clause, but rather "an alternative performance clause that allows for a discounted payment if timely made." According to Stadium Promenade, the Settlement Agreement gave Tenants a choice: "[they] could either pay a discounted settlement sum of $180,000 at set intervals, or [they] could have judgment entered in the full amount of past due rents that remained owing—i.e., $350,000." This argument borders on frivolous for three reasons.

First, on its face, the Settlement Agreement provision authorizing entry of the Stipulated Judgment is not an alternative performance provision. An alternative performance provision gives a contracting party multiple ways to perform its obligations under the contract without breaching the contract. (See *Ridgley*, *supra*, 17 Cal.4th at p. 978.) Here, the Settlement Agreement gave Tenants only one option in how to perform—make the four installment payments totaling $180,000. The provision authorizing the Stipulated Judgment came into effect only if Tenants breached by failing to make a payment and it specified the amount of damages Stadium Promenade was entitled to receive for that breach. Accordingly, it was a liquidated damages provision, not an alternative performance provision.

Second, Stadium Promenade relies only on case law from the State of Washington to support its contention. (See *Bellevue School Dist. No. 405 v. Bentley* (1984) 38 Wash.App. 152.) California law, however, has long rejected the contention that contractual provisions imposing an unreasonable penalty for failure to timely pay are enforceable alternative performance provisions. (*Sybron*, *supra*, 76 Cal.App.3d at p. 900 ["Although provisions for liquidated damages for late payments can be characterized as provisions for alternative performance rather than penalties, and were once enforced as such [citation], it is now clear that when such 'late charges' bear no relation to actual damages for delay, they are void"].)

12

Third, Tenants never agreed "the full amount of past due rents that remained owing [under the Lease at the time of the settlement was] $350,000," or that the $180,000 represented a "discount" from the full amount due under the Lease and the Guaranty. The parties agreed to settle their disputed claims, including not only Stadium Promenade's breach of lease and breach of guaranty claims, but also Tenant's affirmative defense and cross-complaint for breach of the covenant of good faith and fair dealing implied in the Lease. The Settlement Agreement generally releases both sides from all claims and liabilities relating to the Lease and this action; it also specifically declares it "is not to be construed as, and is not, an admission that the parties violated any of their duties or obligations." Accordingly, Stadium Promenade no longer has a claim for any amount it contends Tenants owed under the Lease or Guaranty, and it cannot justify the amount of the Stipulated Judgment by reference to any amounts purportedly due under those documents.[3] (See *Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500.)

Restating the same basic argument, Stadium Promenade also contends the Stipulated Judgment is valid even if the Settlement Agreement provision authorizing its entry is construed as a liquidated damages clause because the Stipulated Judgment does not require Tenants "to pay any more than that which they admittedly owed for past due rent." As just explained, Tenants never admitted or agreed they owed $350,000 in past due rent under the Lease, and Stadium Promenade surrendered all claims to past due rent when it entered into the Settlement Agreement. The only relevant consideration in

---

[3] Tenants filed a "Motion to Consider Additional Evidence on Appeal," asking us to consider the lease between Stadium Promenade and the restaurant to which it relet the Property after Tenants surrendered possession. Tenants contend the lease shows Stadium Promenade relet the Property for significantly more than they were required to pay under the Lease, and therefore Stadium Promenade did not suffer any damages caused by Tenants purported failure to pay rent. We deny the motion because the lease between Stadium Promenade and the new tenant is irrelevant. As explained above, the only relevant consideration here is the damages Stadium Promenade suffered when Tenants breached the Settlement Agreement; any breach of the Lease is irrelevant.

determining the enforceability of the Stipulated Judgment is whether its amount bears a reasonable relationship to the loss that could be anticipated if Tenants failed to perform under the Settlement Agreement. For the reasons already explained, that relationship is lacking.

Stadium Promenade attempts to distinguish *Greentree* on the ground the settlement stipulation in that case lacked an admission of liability, but Tenants here admit they were liable for $350,000 in past due rent. Not so. Here, as in *Greentree*, the Settlement Agreement includes a provision disclaiming any admission of liability and also generally releases all claims except the obligation to perform under the Settlement Agreement. *Greentree* is on all fours with this case and compels the reversal of the Stipulated Judgment.[4]

Finally, Tenants state they do not dispute the "non-penalty aspect of the Settlement Agreement should be enforced" and merely ask that the principal amount of the judgment be reduced to $180,000. We accept this concession, and therefore do not address whether Tenants' failure to make the initial payment under the Settlement Agreement accelerated the other installments and entitled Stadium Promenade to a judgment for the full amount of the settlement, including those installments not yet due. We remand for the trial court to reduce the judgment to $180,000, less any amounts already paid, and plus postjudgment interest and costs. (*Greentree*, *supra*, 163 Cal.App.4th at pp. 502-503.)

---

[4] Stadium Promenade contends *Curren v. Escamilla (In re VEC Farms, LLC)* (Bankr. N.D.Cal. 2008) 395 B.R. 674, mirrors this case and is persuasive authority showing we should affirm the Stipulated Judgment. We disagree. Although *Curren* discussed California law on liquidated damages clauses, it specifically concluded it was not bound to follow California law. (*Id.* at p. 689.) Moreover, *Curren* concluded *Greentree* was distinguishable on its facts because *Greentree* involved underlying claims for breach of contract, while *Curren* involved underlying claims for breach of fiduciary duty and to set aside insider corporate transactions. (*Curren*, at pp. 689-690 & fn. 12.) As explained above, we conclude *Greentree* is dispositive.

Furthermore, we note the Settlement Agreement includes a provision stating the parties shall bear their own attorneys fees and costs leading up to the Settlement Agreement, but the prevailing party is entitled to attorneys fees and costs "[i]n the event that an action is brought by any Party hereto to enforce this [Settlement] Agreement." On remand, the trial court may decide whether any party is entitled to attorney fees under the Settlement Agreement and, if so, the amount.

### III

#### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to reduce the judgment against Tenants to $180,000, less any amounts already paid, and plus postjudgment interest and costs. On remand, the trial court also may hear and decide a motion for attorneys fees under the attorneys fee provision in the Settlement Agreement. Tenants shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

15