[No. 23565-3-III.   Division Three.   November 7, 2006.]

ROBERT C. CARBON ET AL., *Plaintiffs*, CARPORT, L.L.C., *Respondent*, v. SPOKANE CLOSING AND ESCROW, INC., ET AL., *Defendants*, FOX FINANCIAL CORPORATION, *Appellant*, JULIE A. HOWARD ET AL., *Respondents*.

872

*Christopher M. Grimes* (of *Ford & Grimes, P.S.*), for appellant.

*Kathryn R. McKinley* (of *Wolkey McKinley, P.S.*) and *Stephen R. Matthews* (of *Phillabaum, Ledlin, Matthews & Sheldon, P.L.L.C.*), for respondents.

¶1 SCHULTHEIS, A.C.J. — In 2000, Robert and Betty Carbon sold real property in Spokane County (Grove property) to A&P Properties & Development, L.L.C., for approximately $930,000. The Carbons received a promissory note and a 15-day note in exchange. Just before the Carbon/A&P transaction was recorded, the closing agent prepared a promissory note and deed of trust transferring the Grove property from A&P to Solid Rock Investments, Inc., for $2,500,000. The agent also prepared five partial assignments of the A&P/Solid Rock deed of trust, including one to the Carbons in the amount of the 15-day note. Solid Rock never paid anything to A&P, the Carbons received only $150,000 on the 15-day note, and none of the holders of the partial assignments (including the Carbons) recovered anything.

¶2 The Carbons and their successor in interest—Carport, L.L.C.,—sued the closing company, A&P, Solid Rock, the partial interest holders, and several other entities for negligence, criminal profiteering, fraudulent transfer, and other claims, and to quiet title in the property. Many of the defendants were discharged in bankruptcy or failed to appear. The trial court quieted title in the Carbons and Carport (hereafter, Carbons), subject to the prioritized interests of the holders of the partial assignments.

¶3 On appeal, Fox Financial Corporation—a partial interest holder—contends the trial court erred in its determination of the value of and prioritization of the interests in the partial assignments. The Carbons cross-appeal, contending none of the partial interest holders actually had interests in

the property because the partial assignments were not perfected under Article 9 of the Uniform Commercial Code (UCC) (*codified as* former chapter 62A.9 RCW, *recodified as* chapter 62A.9A RCW (2000)). Because we conclude that the trial court, sitting in equity, did not exceed its broad discretionary powers, we affirm.

FACTS

¶4 The common denominator in the complicated transaction that is the subject of this appeal is V. Ram Gopal, a Spokane County resident who was doing business as Pacwest Consulting. Mr. Gopal introduced the Carbons to A&P, arranged the sale of the Grove property to A&P, arranged the promissory note from A&P to Solid Rock (for which he served as president) secured by a deed of trust on the Grove property, and arranged for the five partial assignments on the deed of trust. He and his two companies, Pacwest and Solid Rock, failed to appear at trial and an order of default was entered against them.

¶5 In early 2000, the Carbons entered into negotiations to sell the Grove property to A&P. Angie DeArth of Spokane Closing and Escrow, Inc., prepared the closing documents according to Mr. Gopal's directions. Under the agreement, the Carbons were to receive a promissory note from A&P for $331,537, secured by a first deed of trust on property in Elk, Washington (Elk property). They were to receive the remaining $566,000 of the purchase price in cash by May 15, 2000.[1] Although Mr. Carbon noticed that in the closing documents the payment of $566,000 was now to be secured by a 15-day note from Pacwest, he signed the documents on May 1. The Carbons thought they would retain title to the Grove property until they received payment on both notes, but the statutory warranty deed was recorded on May 8.

¶6 On May 5, the same day Ms. DeArth sent the closing documents to be recorded, she followed Mr. Gopal's instructions to prepare a promissory note for $2,500,000, running

---

[1] Apparently Pacwest "loan[ed]" the Carbons over $30,000 directly, reducing the $600,000 to around $566,000. Clerk's Papers at 79, 83.

from A&P to Solid Rock and secured by a deed of trust on the Grove property. A&P never received any funding from Solid Rock in exchange for the promissory note and deed of trust. However, also on May 5, Mr. Gopal had Ms. DeArth prepare five partial assignments of the deed of trust from Solid Rock to Nona McKinney ($565,000), Mr. Carbon ($560,000), Julie (Howard) Jewell ($375,000), Fox Financial ($451,000), and Pacwest ($549,000). The partial assignment to the Carbons was for the amount due on the Pacwest 15-day note for the sale of the Grove property.[2] These partial interests on the deed of trust were recorded simultaneously on May 8. Pacwest's partial interest was further assigned to Fox and recorded on May 23. Ms. Jewell did not know that she had a partial interest in the Grove property deed of trust, and none of the interest holders knew of the other interests in that deed of trust.[3] The partial interest holders did not file a UCC1 financing statement.

¶7 The Carbons eventually discovered that the promissory note secured by the deed of trust on the Elk property was worthless because the Elk property was in default on a previous deed of trust and was sold at a trustee's sale. They never received payment on the note. Of the $566,000 owed on the Pacwest 15-day note, they received only $150,000. They filed an amended complaint against Spokane Closing, Ms. DeArth, Mr. Gopal (and his companies), A&P, Fox, Ms. McKinney, Ms. Jewell, and others in August 2003, alleging negligence, breach of fiduciary duties, criminal profiteering, Consumer Protection Act (chapter 19.86 RCW) violations, quiet title, fraud, and fraudulent transfer.

¶8 In a lengthy memorandum opinion and supplemental letter to the parties after a bench trial, the trial court con-

---

[2] Although the partial assignment to the Carbons indicates it was given to secure debt of $560,000.00, the actual amount of the note prepared by Ms. DeArth was for $566,193.83—the balance of the amount owed on the Grove property transaction. Using $560,000 as the amount intended for the Carbons' partial interest, the total of the five partial interests equals $2,500,000.

[3] Summary judgment was entered against Ms. McKinney, the other holder of a partial interest, before trial. The record does not indicate what she knew about her interest.

cluded that Ms. DeArth breached her fiduciary duty to the Carbons. Relevant to this appeal, the trial court also concluded that the transfer from A&P to Solid Rock was fraudulent, that the partial interest holders were holders in good faith and for value, and that they were entitled in equity to recover against the Grove property, which was quieted in the Carbons. The Carbons were given first priority because their assignment was part of the consideration for the sale of the Grove property. Ms. Jewell received second priority because she paid cash for her partial interest, and Fox received third priority because its value represented renegotiated existing security interests in other properties.

¶9 Fox appeals and the Carbons cross-appeal. Ms. Jewell joins in the Carbons' brief.

PRIORITIZED PARTIAL INTERESTS IN THE DEED OF TRUST

¶10 Fox first contends the Carbons did not bargain for their partial assignment of the note and deed of trust. Consequently, it argues, their partial interest is not enforceable because it is not supported by consideration. In particular, Fox assigns error to the trial court's finding that "the partial assignment of the deed of trust in favor of [Mr.] Carbon was given for value, the original Grove Road transaction, and in good faith," Clerk's Papers (CP) at 92, and its conclusion that "Carbon (Carport LLC) will have first priority as the assignment was part of the consideration for sale of the property." CP at 229. On appeal, this court's review is limited to determining whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *Keever & Assocs., Inc. v. Randall*, 129 Wn. App. 733, 737, 119 P.3d 926 (2005), *review denied*, 157 Wn.2d 1009 (2006).

¶11 Generally, a contract is not binding unless supported by consideration. *Huberdeau v. Desmarais*, 79 Wn.2d 432, 439, 486 P.2d 1074 (1971). To constitute consideration, a performance or promise must be bargained for, meaning "it

is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." RE-STATEMENT (SECOND) OF CONTRACTS § 71(2) (1981), *quoted in Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004).

¶12 Fox contends the Carbons were not notified when Solid Rock assigned them a partial interest in the note and deed of trust; therefore, they could not have bargained for that partial interest. However, the Carbons exchanged the Grove property for two promises from A&P: the promissory note from A&P for $331,537 and the 15-day note from Pacwest for the remaining $566,000. Later, apparently without notice to the Carbons, Solid Rock assumed the Pacwest debt to the Carbons and memorialized that obligation with the partial assignment of the deed of trust and note on the Grove property. Although the Carbons did not specifically bargain for this assignment with Solid Rock, they did bargain with the original buyer, A&P, which promised payment from Pacwest. In effect, A&P delegated its duty to Pacwest, which then delegated to Solid Rock. *See* 25 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 13.9, at 256 (1998). Because the bargained-for promise was A&P's promise to pay, the Carbons had an enforceable agreement, even when the form of the consideration changed without their knowledge.

¶13 Fox next contends the trial court erred in finding that the partial assignments of the deed of trust were worthless. It argues that it gave valuable consideration for its partial interest and that the Grove property had development potential far beyond its market value. Fox contends each partial interest holder is entitled to a share of the property when it is eventually sold and insists the trial court had no need to sit in equity and prioritize those interests now.

¶14 Because this is an action in part to quiet title, the trial court sat in equity to resolve the competing claims of ownership in the Grove property. *Kobza v. Tripp*, 105 Wn.

App. 90, 95, 18 P.3d 621 (2001). Consequently, the trial court did not err in applying equitable principles to resolve the interests of the partial interest holders. *See Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005) (the question of whether equitable relief is appropriate is a question of law).

■■■■ ¶15 As the trial court found, each of the holders of the partial interests in the A&P/Solid Rock deed of trust gave valuable consideration. Additionally, the trial court found that the deed of trust was fraudulent under RCW 19.40.041(a)(2)(i) of the Uniform Fraudulent Transfer Act (UFTA).[4] Although a fraudulent transfer is voidable, RCW 19.40.081(d) provides that a good faith transferee is entitled to a lien on the asset transferred up to the value given to the debtor for the transfer. *Assocs. Hous. Fin., L.L.C. v. Stredwick*, 120 Wn. App. 52, 59, 83 P.3d 1032 (2004). Because the debtor here—A&P—received value from the transferees/ partial interest holders, they were entitled to liens on the property for those values. Unfortunately, the combined values of their partial interests greatly exceeded the value of the property.[5] Consequently, the trial court sitting in equity prioritized their partial interests. The Carbons, whose interest was given in consideration for the original transaction, were given first priority. Ms. Jewell, who gave cash as an investment in the Grove property development, received second priority. And Fox received third priority because it did not provide new money but renegotiated existing security interests in other properties.

¶16 A trial court sitting in equity has broad discretionary power to fashion equitable remedies. *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). The goal of the court in equity is to do substantial justice and to end

---

[4] The UFTA provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer without receiving a reasonably equivalent value and the debtor was "engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." RCW 19.40.041(a)(2)(i).

[5] Fox did not provide evidence at trial that the actual or potential value of the Grove property was significantly higher than its purchase price.

litigation. *Carpenter v. Folkerts*, 29 Wn. App. 73, 78, 627 P.2d 559 (1981). Here, the good faith partial interest holders had no sufficient remedy under the law. In an attempt to achieve substantial justice to all of the parties, the court awarded higher priority to those interests that came first (the Carbons) and that represented direct investment in the property (Ms. Jewell). We conclude that prioritizing the partial interests in this manner was not so manifestly unreasonable or based on such untenable grounds as to constitute an abuse of discretion. *Paris v. Allbaugh*, 41 Wn. App. 717, 720, 704 P.2d 660 (1985) (standard for reviewing discretion of the court).

EFFECT OF ARTICLE 9 ON THE PARTIAL INTERESTS

¶17 On cross-appeal, the Carbons contend the partial assignment holders received no actual interest in the Grove property and failed to perfect their security interests in the note from A&P to Solid Rock. They argue that their successor in interest—Carport—has the only valid interest in the Grove property because it holds record title to the property.

¶18 As discussed above, the trial court found that the transfer of the Grove property from A&P to Solid Rock was fraudulent because it was not supported with adequate consideration, citing RCW 19.40.041(a)(2)(i). Because the transfer was fraudulent, the Carbons (as the creditors) were entitled to recover judgment for the value of the asset transferred. RCW 19.40.081(b). A&P quitclaimed the Grove property to Carport just prior to trial. The record does not indicate whether A&P and the Carbons considered the quitclaim to be a satisfaction of the judgment. Whether or not the quitclaim was intended to satisfy the Carbons' judgment against A&P, however, the partial interest holders, due to their status as good faith transferees, were entitled to liens on the property up to the value given to A&P. RCW 19.40.081(d)(1).

¶19 The Carbons argue that the partial interest holders were subject to the perfection requirements of Article 9 of

the UCC. Article 9 does not apply to transfers of interests in real property. Former RCW 62A.9-104(j) (1997). However, Article 9 will apply to a security interest in the promissory note, even if the promissory note is secured by a real property mortgage or deed of trust. *Freeborn v. Seattle Trust & Sav. Bank*, 94 Wn.2d 336, 341-42, 617 P.2d 424 (1980) (former RCW 62A.9-102 (1965)). The partial assignments of the deed of trust included an interest in the promissory note from A&P to Solid Rock. Consequently, the partial interest holders could have secured their interests in the note by perfecting under Article 9. None of them did so. Thus, none had secured interests in the note.

¶20 In prioritizing their interests in the *property*, the trial court was not awarding them priorities in the note pursuant to Article 9 but was awarding them priorities in liens on the property in equity. The trial court did not err in sitting in equity and quieting title subject to the prioritized interests of the good faith partial interest holders.

¶21 Affirmed.

BROWN and KATO, JJ., concur.