# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| INTERFACE TECHNOLOGIES NORTHWEST, INC., a Washington corporation,<br><br>　　　　　Plaintiff,<br><br>KEVIN SCHMIDT, a married man; and VICKI SCHMIDT BATTISTA, a married woman,<br><br>　　　　　Respondents,<br><br>　　　　　v.<br><br>SCHMIDT AND SCHMIDT, LLP, a Washington limited liability partnership; and RACHEL SCHMIDT, an individual<br><br>　　　　　Appellants,<br><br>MATHEW RAMSEY, both individually and as managing partner of Schmidt and Schmidt, LLP,<br><br>　　　　　Third-Party Appellant,<br><br>D.W. SCHMIDT & ASSOCIATES, INC., a Washington corporation,<br><br>　　　　　Third-Party Respondent. | No. 84817-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Kevin Schmidt and Vicki Schmidt Battista filed a breach of contract suit against Rachel Schmidt and Schmidt and Schmidt, LLP (S&S),

alleging Rachel[1] and S&S had refused to satisfy their contractual obligations relating to an agreement on a loan guaranty. The trial court resolved numerous claims on summary judgment, and a jury trial was held on Rachel, S&S, and S&S's managing partner, Mathew Ramsey's remaining counterclaims. Following a jury verdict in Kevin and Vicki's favor, Rachel, S&S, and Ramsey (collectively referred to as "the Appellants") appealed, arguing the court erred in resolving certain claims on summary judgment and erred in amending its final judgment under CR 60. Finding no error, we affirm.[2]

I

S&S is a Washington limited liability partnership that was owned by Duane Schmidt, Rachel, Kevin, and Vicki. In 2006, S&S purchased real property (the Property) and financed the purchase through the sale of another property and a loan from U.S. Bank N.A. The loan documents were set to mature on January 15, 2017. On December 28, 2006, the four owners of S&S guaranteed the loan documents.

In 2008, Vicki transferred her interest in S&S to Duane and Rachel. On June 19, 2015 Ramsey purchased Kevin's interest in S&S. In 2016, Duane passed away and his interest in S&S transferred to Rachel. Duane's passing left Rachel and Ramsey as the current owners of S&S.

---

[1] For clarity, we will use first names when referring to members of the Schmidt family. We intend no disrespect.

[2] Kevin and Vicki requested that this court decide the case without oral argument pursuant to RAP 11.4(j). We deny the motion.

In January 2017, the U.S. Bank loan matured. Pete Wiseman, a U.S. Bank client manager, testified by deposition that prior to the maturity date, he was informed that S&S planned to sell the Property. Wiseman testified U.S. Bank provided a 90 day extension on the loan. S&S failed to sell the Property during the extension period. According to the parties' contractual recitations, U.S. Bank was willing to extend the loan, provided that the original guarantors—Rachel, Kevin, and Vicki—and Interface Technologies Northwest Inc. "executed a guaranty or other undertaking whereby they are responsible as guarantors for payment and/or other performance on the Loan." Kevin and Vicki were "unwilling to execute the Guaranty, absent qualifications, plus compensation and specific commitments and indemnification from [S&S] and Rachel."

Rachel, Kevin, Vicki, S&S, and Interface entered into an "Agreement re Guaranty" (the Contract). Under the Contract, dated May 2, 2017, Kevin and Vicki would renew their guaranty for the U.S. Bank loan. But the Contract stated that while Kevin, Vicki, and Interface remained obligated on the renewed guaranty, S&S or Rachel "shall compensate each of them" $500.00 a month and $10,000.00 every six months. S&S and Rachel agreed to seek a sale of the Property and a loan that did not require a guaranty from Kevin and Vicki. The Contract clarified, "Nothing herein is intended to preclude [S&S] or Rachel from obtaining in any other manner a release of Kevin Vicki and [Interface] from liability on the Guaranty."

On May 12, 2017, Rachel, Kevin, Vicki, and Interface entered into an amended and restated guaranty with U.S. Bank. The amended and restated guaranty, "issued as an amendment and restatement in its entirety" to the December 2006 guaranty, stated,

> 12. Prior Agreements. *Unless and except to the extent that (a) the Agreement specifically provides that it amends and restates an earlier guaranty* or (b) Bank shall hereafter expressly agree in writing to limit the effectiveness of the Agreement, the effect of any earlier or later guaranty by Guarantor shall be cumulative with the Agreement, and all guaranties by Guarantor shall be construed to provide Bank with the broadest possible scope and amount of guarantied obligations.

(Emphasis added and boldface omitted.)

Rachel and S&S made four or five monthly payments to Kevin and Vicki under the Contract, but declined to make further payments.

Kevin and Vicki filed suit against S&S and Rachel for breach of contract, conversion, and unjust enrichment. Kevin and Vicki alleged that, among other things, Rachel and S&S had refused to satisfy their Contract obligations and had secured benefits from Kevin and Vicki without paying the fair value of benefits received.[3]

Rachel and S&S filed an answer to the complaint, asserting numerous affirmative defenses and counterclaims. Ramsey appeared as a party, both individually and as managing partner of S&S, and asserted third party claims

---

[3] Interface brought a separate action on the same basis. Thereafter, the court found that Interface, S&S, Rachel, and Ramsey stipulated that all matters between them " 'should be dismissed with prejudice and without an award of attorney's fees and costs.' " (Boldface omitted.)

against Kevin and D.W. Schmidt & Associates (DWS)—a business owned by Kevin and Vicki.

Kevin and Vicki filed a motion for partial summary judgment on their breach of contract claim. Rachel and S&S filed their own motion for summary judgment and requested that the trial court void the Contract for lack of consideration and find it contained impermissible penalty payment provisions.

On February 21, 2020, the trial court granted Kevin and Vicki's motion for partial summary judgment and denied S&S and Rachel's motion for summary judgment. The trial court ordered that Kevin and Vicki were each owed $39,500.00 as the principal amount due under the Contract, and S&S and Rachel's defenses of mutual mistake, lack of consideration, duress, and imposition of a penalty were denied. The court reserved for trial the issue of reaffirmation or amendment to the original guaranties by execution of the 2017 renewed guaranties.

Kevin and Vicki filed a further motion for partial summary judgment requesting the trial court dismiss the Appellants' counterclaims because the statute of limitations for the claims had expired. By order dated October 5, 2020, trial court denied the motion "as to [Ramsey's] claims for breach of the 2015 contract and as to all of [Ramsey's] claims for fraud," but granted the motion "as to all of [Ramsey's] other individual claims." The trial court further ruled the motion was granted "with respect to [Ramsey's] claims as managing partner of [S&S] for breach of fiduciary duty, violation of implied duty of good faith and fair dealing, negligent misrepresentation, conversion, unjust enrichment, and tortious interference with

5

business expectations," and the motion was denied for Ramsey's remaining claims for breach of contract and for intentional fraud.

Trial began on September 27, 2022, for the Appellants' remaining counterclaims.

At trial, the parties had colloquy with the court over the nature of what issue was reserved for the jury concerning whether the 2017 document was a reaffirmation or amendment of the earlier guaranty. The Appellants proposed a jury interrogatory asking, "Did [Kevin and Vicki] prove by a preponderance of the evidence that the 2017 personal guaranties were an amendment of the 2007 personal [guaranties] and not a reaffirmation of the guaranties in effect as of 2007?" However, the Appellants proposed no instructions defining any of those terms or instructing the jury on how to make this determination. And their proposed jury instructions regarding the contract told the jury that the only questions to be decided were mutual assent and mutual mistake. The parties discussed the renewed guaranty matter, and the trial court stated it had "not heard anything in the presentation of evidence that would lead me to conclude that the manner in which the guaranties were initially signed or subsequently executed relates to a damages claim that's recoverable by [Kevin, Vicki, or DWS]."[4]

---

[4] At oral argument, Ramsey argued that Kevin and Vicki agreed they were not claiming any damages from breach of the Contract. Wash. Ct. of Appeals oral arg., Interface Techs. Nw., Inc. v. Schmidt & Schmidt, LLP, No. 84817-8-I (Sept. 24, 2024), at 5 min., 13 sec., to 5 min., 23 sec., https://tvw.org/video/division-1-court-of-appeals-2024091259/?eventID=2024091259. The trial court's statement—which Kevin and Vicki agreed was correct—discusses only whether the manner in which the documents were signed affected any damages issue. Kevin and Vicki's agreement was not a waiver of the claim for damages, which was the original claim on which Kevin and Vicki filed the action and on which the

On October 18, 2022, the jury returned a verdict in favor of Kevin, Vicki, and DWS on all claims submitted to it.  The trial court entered judgment on the special verdict on November 21, 2022.  In accordance with the jury's verdict, the trial court ruled,

> 1.1.   [Rachel and S&S] shall recover nothing from [Kevin and Vicki], and [Rachel and S&S's] counterclaims are all hereby dismissed with prejudice;
> 1.2.   [Ramsey] shall recover nothing from [Kevin and DWS], and [Ramsey's] claims are all hereby dismissed with prejudice;
> 1.3.   The factual issues arising out of Section 2.4 of the Court's February 21, 2020 Order were resolved by the Court in favor of [Kevin and Vicki] prior to the submission of the special verdict to the jury; and
> 1.4.   As prevailing parties, [Kevin, Vicki, and DWS] are entitled to recover their taxable costs of suit, and attorneys' fees, in such amounts as shall be determined by further order of the Court.

The judgment did not award damages to Kevin and Vicki based on the February 21, 2020 summary judgment order.

On December 15, 2022, Kevin, Vicki, and DWS moved for an award of attorney fees and costs incurred.  On December 19, 2022, the Appellants filed objections to the motion, arguing it was time barred under CR 54(d)(2) and untimely under CR 6(d).  The trial court held that any inconvenience caused by the one day delay could be remedied by rescheduling the motion hearing date, and rescheduling would not be prejudicial to the Appellants.

On December 20, 2022, the Appellants filed a notice of appeal, seeking review of (1) the trial court's judgment on special verdict entered on November 21, 2022, (2) the court's order granting partial summary judgment entered on February

---

earlier summary judgment order had ruled in their favor except on the reserved issue.

21, 2020, and (3) the court's summary judgment order entered on October 5, 2020 among other decisions.

On February 9, 2023, Kevin, Vicki, and DWS moved for an entry of a judgment on the court's February 21, 2020 order granting partial summary judgment. During argument on the motion, Kevin, Vicki, and DWS argued an amendment of the February 21, 2020 order was required because the clerk of court did not recognize it as a judgment. The Appellants argued the new judgment did not comply with CR 54(f)(2) and Kevin, Vicki, and DWS were attempting to amend the February 21, 2020 order and that required permission of the appellate court under RAP 7.2.

On March 6, 2023, the trial court issued a memorandum decision addressing the motion for attorney fees, the motion for entry of judgment on the February 21, 2020 partial summary judgment order, and the motion for reconsideration regarding the timeliness of the fee motion. The trial court found the February 21, 2020 order was not a " 'judgment.' " The trial court noted, "Ideally, the sums would have been included in the Judgment on Special Verdict signed by the Court on 11/21/22, but they were not." The trial court declined to act on the proposed judgment submitted until the Court of Appeals gave permission. The trial court addressed the argument that Kevin and Vicki failed to timely file their motion for attorney fees and costs, and held that the Appellants had "not been prejudiced by the delay." The trial court ruled the motion for attorney fees and costs relating to the first summary judgment motion was properly brought under the terms of the Contract.

8

On March 22, 2023, this court granted permission under RAP 7.2(e) for the trial court to enter judgment on the February 21, 2020 order, and stated that "[the] Appellants, if they so desire, may challenge the merits of that decision in a separate review that may ultimately be consolidated with the present appeal."

On April 13, 2023, the trial court entered judgment on the February 21, 2020 order granting partial summary judgment, awarding $39,500.00 each to Kevin and Vicki and interest from the date of the February 2020 summary judgment order. The trial court concluded, "Pursuant to the entry [of] the November 21, 2022 Judgment, the February 21, 2020 Order constitutes a final Order from which a Judgment may now be entered."

On May 16, 2023, more than 30 days later, the Appellants filed an amended notice of appeal, asking this court to review the judgment on the February 21, 2020 order granting partial summary judgment.

On June 14, 2023, the trial court entered judgment awarding attorney fees and costs to Kevin and Vicki. On June 22, 2023, the Appellants filed a further amended notice of appeal, seeking review of the order on the motion for attorney fees relating to Kevin and Vicki's first motion for partial summary judgment, and judgment awarding attorney fees and costs.[5]

---

[5] On June 30, 2023, Kevin, Vicki, and DWS filed a notice of cross appeal and sought review of the judgment awarding attorney fees entered on June 14, 2023. The parties subsequently filed a motion for voluntary dismissal of their cross appeal. Our commissioner granted the request and denied the Appellants' request for an award of fees and costs.

II

Kevin, Vicki, and DWS argue we should dismiss the appeal in its entirety because the Appellants failed to timely appeal from the April 2023 final judgment.

To determine the timeliness of the Appellants' appeal, we must interpret the rules of appellate procedure (RAP). Denny v. City of Richland, 195 Wn.2d 649, 653, 462 P.3d 842 (2020). The interpretation of a court rule presents a question of law that we review de novo. State v. Stump, 185 Wn.2d 454, 458, 374 P.3d 89 (2016).

RAP 2.2(a)(1) allows a party to appeal a "final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs." The term "final judgment" is not defined in the RAP. State v. Taylor, 150 Wn.2d 599, 602, 80 P.3d 605 (2003). *Black's Law Dictionary* defines "final judgment" as " '[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment.' " Taylor, 150 Wn.2d at 602(quoting BLACK'S LAW DICTIONARY 847 (7th ed. 1999)).[6] *Webster's Third New International Dictionary* defines "final judgment" as " 'a judgment . . . that eliminates the litigation between the parties on the merits and leaves nothing for the inferior court to do in case of an affirmance except to execute the judgment.' " In re Pers. Restraint of Skylstad, 160 Wn.2d 944, 949,

---

[6] The most recent edition of Black's provides the same definition. See BLACK'S LAW DICTIONARY 1006 (12th ed. 2024).

162 P.3d 413 (2007) (alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 851 (2002)).

In its March 6, 2023 memorandum decision, the trial court explained that the November 21, 2022 judgment was intended to be a final judgment, but by oversight it failed to include the sums estimated by the February 21, 2020 summary judgment order. The trial court noted it could not enter a new judgment because the Court of Appeals had already accepted review, and the trial court needed this court's permission pursuant to RAP 7.2. The November 21, 2022 judgment is properly viewed as a final judgment, notwithstanding the later revelation that it required correction. The Appellants' December 20, 2022 notice of appeal was timely and properly brought up for review of the challenged decisions.[7]

On March 22, 2023, this court granted permission pursuant to RAP 7.2(e) for the trial court to enter judgment on the existing summary judgment order and noted that "[the] Appellants, if they so desire, may challenge the merits of that decision in a separate review that may ultimately be consolidated with the present appeal."[8] On April 13, 2023, the trial court entered judgment on the February 2020 order granting partial summary judgment to Kevin and Vicki and fully incorporated by reference the February 21, 2020 order and the November 21, 2022 judgment dismissing all of the Appellants' claims after the jury verdict. The April judgment settled all issues except attorney fees and costs, making it a final judgment for

---

[7] RAP 5.2(a) provides that a notice of appeal must be filed with 30 days of the decision that the party filing the notice wants reviewed.

[8] RAP 7.2(e) provides in part, "Except as provided in rule 2.4, a party may only obtain review of the decision on the postjudgment motion by initiating a separate review in the manner and within the time provided by these rules."

purposes of RAP 2.2(a)(1). See Nestegard v. Inv. Exch. Corp., 5 Wn. App. 618, 623-24, 489 P.2d 1142 (1971) (A judgment is final "even if it directs performance of certain subsidiary acts in carrying out the judgment, the right to the benefit of which is adjudicated in that judgment."). The Appellants did not appeal the April 13 order until May 16, 2023. This was not within 30 days as required by RAP 7.2(e) and RAP 5.2, and the provisions of RAP 2.4 do not apply. The Appellants' appeal of the April 2023 judgment is untimely and that judgment is not before us.

III

Because the Appellants timely appealed the November 21, 2022 judgment, the February 21, 2020 partial summary judgment order is before us.

A motion for summary judgment may be granted when there is " 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " Ramey v. Knorr, 130 Wn. App. 672, 685, 124 P.3d 314 (2005) (quoting CR 56). "The standard of review for a summary judgment order is de novo . . . viewing the facts and reasonable inferences in the light most favorable to the nonmoving party." Id. "The moving party bears the initial burden 'to prove by uncontroverted facts that there is no genuine issue of material fact.' " Welch v. Brand Insulations, Inc., 27 Wn. App. 2d 110, 115, 531 P.3d 265 (2023) (quoting Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)). If the moving party satisfies its burden, then the burden shifts to the nonmoving party to " 'set forth specific facts evidencing a genuine issue of material fact for trial.' " Id. (quoting Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995)).

On a question of fact, summary judgment is appropriate only if reasonable persons could reach but one conclusion. Marincovich v. Tarabochia, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). A party opposing a motion for summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or affidavits that are not admissible as evidence under CR 56(e). See Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 220, 522 P.3d 80 (2022). The nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. Herman v. Safeco Ins. Co. of Am., 104 Wn. App. 783, 787-88, 17 P.3d 631 (2001).

A

The Appellants argue the trial court erred in granting Kevin and Vicki's motion for partial summary judgment on their breach of contract claim because the Contract contained no consideration and contained an illegal penalty. We disagree.

Generally, a contract is not binding unless supported by consideration. Huberdeau v. Desmarais, 79 Wn.2d 432, 439, 486 P.2d 1074 (1971). "To constitute consideration, a performance or promise must be bargained-for, meaning 'it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" Carbon v. Spokane Closing & Escrow, Inc., 135 Wn. App. 870, 876-77, 147 P.3d 605 (2006) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 71(2) (1981)). The sufficiency of

consideration is a question of law for the court to decide.  Evans v. Or. & Wash. R.R. Co., 58 Wash. 429, 434-35, 108 P. 1095 (1910).

Here, Kevin and Vicki promised to sign the 2017 restated guaranty in exchange for $500.00 every month and $10,000.00 every six months that they remained obligated on the guaranty.  In return, Rachel and S&S promised to compensate Kevin and Vicki and indemnify them against any liability that either might suffer in relation to executing the guaranty.  This constitutes adequate consideration.  Kevin and Vicki agreed to sign a new document with new terms and conditions.  Subsection 12 of the 2017 guaranty stated, "Unless and except to the extent that (a) the Agreement specifically provides that it amends and restates an earlier guaranty . . . the effect of any earlier or later guaranty by Guarantor shall be cumulative with the Agreement."  The opening paragraph of the guaranty stated the 2017 guaranty "is issued as an amendment and restatement in its entirety of" the 2006 guaranty.[9]

The terms requiring payment to Kevin and Vicki are enforceable.  An alternative contract allows a promisor to render " 'one of two or more alternative performances either one of which is mutually agreed upon as the bargained-for equivalent given in exchange for the [other party's] return performance.' " Chandler

---

[9] For the first time in their reply brief, the Appellants argue that whether there was a lack of consideration because the new guaranty was merely a reaffirmation was required to be submitted to the jury.  Although the Appellants proposed a jury interrogatory dealing with the question, they did not propose instructions on the issue, but rather submitted proposed instructions telling the jury the only contract issues before it were mutual assent and mutual mistake.  Therefore, the Appellants waived any issue that could have been submitted to the jury by failing to propose appropriate instructions for it to be submitted to the trier of fact based on trial evidence.  See CR 49(a).

v. Doran Co., 44 Wn.2d 396, 401, 267 P.2d 907 (1954) (quoting 5 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1079, at 379 (1951)). By comparison, a liquidated damages provision is a sum of money agreed upon in advance that is a reasonable forecast of just compensation for the harm caused by breach of the contract. Walter Implement, Inc. v. Focht, 107 Wn.2d 553, 559, 730 P.2d 1340 (1987). Whether a contract provides for alternative performance or for liquidated damages is a question of factual interpretation that does not rely upon the form of words used by the parties. Bellevue Sch. Dist. No. 405 v. Bentley, 38 Wn. App. 152, 155, 684 P.2d 793 (1984).

Whether a contract provides for an alternative performance or for a liquidated damages provision depends on whether (a) the contract gives the promisor a "real option," and (b) there is a reasonable equivalence between the two choices. Minnick v. Clearwire U.S. LLC, 174 Wn.2d 443, 450, 275 P.3d 1127 (2012). A real option exists if either option might prove more desirable and the promisor is free to choose either one. Chandler, 44 Wn.2d at 401; Bentley, 38 Wn. App. at 155.

Here, a real option existed because at the time of the Contract, the Appellants had the option to either relieve Kevin and Vicki from their obligations under the amended guaranty or compensate Kevin and Vicki under the terms of the Contract. The Appellants could have relieved Kevin and Vicki from their obligations by selling the Property, refinancing the loan without Kevin and Vicki's guaranty, or "any other manner" by which to release Kevin and Vicki from liability. Or, the Appellants could have continued the business of leasing the Property and

compensated Kevin and Vicki—long since nonowners—for the continued extension of their personal credit to support the business's debt.

Once a court has determined a real option existed, it must determine if there exists a reasonable equivalence between the options. Minnick, 174 Wn.2d at 452. The court must look to the relative value of the options at the time of contracting to determine if a reasonable equivalence exists. Bentley, 38 Wn. App. at 155-56; Chandler, 44 Wn.2d at 403-04. If the values are "so disproportionate as to be unequal," then one option is a penalty and not an alternative performance. Chandler, 44 Wn.2d at 404. Both Bentley and Chandler analyze the relative value of options using a deferential lens. In Bentley, the court held that a reasonable equivalence existed between the teacher returning to work or returning the sabbatical pay instead. 38 Wn. App. at 156. Bentley claimed the values were unequal because no reasonable person would choose unemployment. Id. However, viewed at the time of contracting, a teacher may want to retain control over future plans and not return to work. Id. Similarly, in Chandler, the court was unwilling to declare the option between the property and additional salary unequal because there was no vast disproportionality between them. 44 Wn.2d at 404. The Appellants fail to show how the options were vastly disproportionate viewed at the time of contracting.[10]

_____

[10] We would also uphold the Contract as a liquidated damages clause. Liquidated damages clauses are favored in Washington, and courts will uphold them if the sums involved do not amount to a penalty or are otherwise unlawful. Ashley v. Lance, 80 Wn.2d 274, 280, 493 P.2d 1242 (1972). Here, the liquidated sum was a reasonable estimate of Kevin and Vicki's potential damages in the event of a breach of the promises to relieve and protect them from personal exposure on the over half million dollar loan guaranty.

Because the Contract had consideration and was a valid alternative contract, the trial court did not err in granting Kevin and Vicki's motion for partial summary judgment.[11]

B

The Appellants argue the trial court erred in dismissing their defenses of mutual mistake, lack of consideration, duress, and imposition of a penalty provision because Kevin and Vicki never sought to have them decided on summary judgment.

To show error, it is the Appellants' burden to demonstrate that they supported the affirmative defenses on the merits in the trial court and that there was a genuine issue of material fact requiring submission to the trier of fact. CR 56. However, the Appellants devote three pages of their brief to the subject of the four affirmative defenses—making solely a procedural argument—and provide no citations to any evidence contained in the record that might have supported these defenses. This would leave the panel to parse through the more than 7,500 pages of combined trial transcript and clerk's papers submitted to investigate whether there might be substantive support for these defenses. We decline to do so. See Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966) ("We are not required to search the record for applicable portions thereof in support of the [Appellants'] arguments.").

---

[11] Had we concluded the February 21, 2020 summary judgment order was error, we would have needed to address the consequences of holding under a timely notice of appeal that the order was erroneous, even though the later decision reducing it to judgment was not timely appealed. But since we conclude the order was not erroneous, it is not necessary to address this question.

C

The Appellants argue the trial court erred in dismissing their[12] claims in the court's October 5, 2020 summary judgment order because the court's determinations were based on an "improper determination of genuine issues of material fact."[13] We disagree.

The Appellants argue the trial court wrongly decided when Ramsey's cause of action accrued and whether Ramsey had the right to rely on information and representations provided by Kevin. The trial court dismissed Ramsey's individual claims for breach of fiduciary duty, negligent misrepresentation, conversion, and unjust enrichment on summary judgment because they were barred by the statute of limitations. Kevin and Vicki filed the action on October 25, 2018, and because

---

[12] The brief of appellant address only claims asserted by Ramsey. Thus, any claims asserted by Rachel and S&S are waived. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (appellants waive assignments of error where they present no argument in their opening brief on the claimed error). Contrary to the Appellants' argument offered in reply, because their claims were dismissed on limitations grounds and they rely on the discovery rule to avoid the statute of limitations, it is necessary for the claimants to show their due diligence in discovering their potential claims, and that inquiry cannot be presumed to be identical for three different claimants.

[13] Citing Green v. Normandy Park, 137 Wn. App. 665, 674-75, 151 P.3d 1038 (2007) and RAP 9.12, Kevin, Vicki, and DWS argue we should affirm the trial court's order because, in granting them summary judgment, the trial court failed to list any of the documents it considered as it was required to do under CR 56. Green is distinguishable. There, the party that sought and obtained summary judgment sought to defend the order based on documents never identified as having been considered, and serially failed to perfect the record. Id. at 677, 679-81. We decline to resolve this matter based on Green and RAP 9.12. Although the materials presented to the superior court at summary judgment are not before us for the reasons explained in Green, we are able to discern from the record what was considered and determine that the record does not show error. We therefore rely on the principle that an appellate court may affirm on any basis supported by the record. Redding v. Virginia Mason Med. Ctr., 75 Wn. App. 424, 426, 878 P.2d 483 (1994).

service occurred within 90 days thereafter, RCW 4.16.170, we assume without deciding that the original filing date tolled the statute of limitations for counterclaims properly asserted under CR 13 and CR 15 and not already time-barred at that time.[14] Under the discovery rule, Ramsey bears the burden of proving that the necessary facts could not be discovered in time. Burns v. McClinton, 135 Wn. App. 285, 300, 143 P.3d 630 (2006). Thus, the question at summary judgment and before us is whether the Appellants point to evidence that would meet their burden of showing a genuine issue of material fact as to whether Ramsey did not discover, and in the exercise of due diligence should not have discovered, the factual basis for any of these four claims before October 25, 2015, three years before the action was filed. RCW 4.16.080 (statute of limitations is three years).

The Appellants point to events occurring in January 2016, July 2016, and July 2018 to attempt to make this showing. In his first declaration (CP 1818), Ramsey testified that

> shortly after January 26, 2016, Kevin spoke with the Partnership's Accountant Ryan Blume. Mr. Blume informed Kevin that I was assuming Kevin's negative capital account balance as part of the [June 19, ]2015 Assignment. However, I was not made aware of this assumption of Kevin's negative capital account until he had a meeting with Ryan Blume on July 28, 2016. Prior to this date, Rachel was unaware of any negative capital account balance held by Kevin, nor had I been informed that he was assuming Kevin's $32,325.00 negative capital account balance.

___

[14] This assumption gives the Appellants the benefit of the most favorable possible tolling date under "the common law rule that if a counterclaim that arises out of the same transaction or occurrence is not barred by the statute of limitations at the commencement of the action then it is not barred even if the statute expires during the pendency of the action." Bennett v. Dalton, 120 Wn. App. 74, 81, 84 P.3d 265 (2004).

19

The Appellants also cite a declaration by S&S's accountant to argue that Ramsey unknowingly assumed Kevin's canceled debts on July 28, 2016. However, the accountant's declaration states only that prior to a meeting with Rachel and Ramsey on that date, he had not spoken with them about Ramsey's assumption of Kevin's negative capital account. The Appellants further rely on a forensic accountant who testified that S&S's records were unreliable and it was therefore "unlikely that a reasonable person would have been able to understand or identify the errors in reporting," and at the very least "it would have taken some time to discover the many inaccuracies." Finally, the Appellants argue that $53,900.59 allegedly taken by Kevin "was not present anywhere in the Partnership's financials," but their evidence supports only the contention that it was part of another lease and "was not disclosed to [Ramsey] until July 3, 2018 at the earliest."

This is the sum total of the evidence suggested to this court as establishing a fact question about the discovery rule for the accrual of Ramsey's claims for breach of fiduciary duty, negligent misrepresentation, conversion, and unjust enrichment.[15] While the evidence suggests that Ramsey did not learn of these matters until January 2016 at the earliest, it fails to indicate anything at all about Ramsey's diligence at any time. Rather, the Appellants appear to argue that it can

---

[15] At oral argument, the Appellants' counsel also directed us to review the declaration of the Appellants' trial lawyer. Wash. Ct. of Appeals oral arg., Interface, No. 84817-8-I, supra at 22 min., 10 sec., https://tvw.org/video/division-1-court-of-appeals-2024091259/?eventID=2024091259. The declarant testified, "It is uncontroverted, as Mr. Ramsey testified in his deposition, that he did not see a copy of the [Interface] commercial lease until sometime in 2016. Thus, he had no reason to know at the time of the June 2015 email that [Interface] was underpaying its rent obligations." This is not evidence allowing a jury to reach a conclusion on the question of due diligence by Ramsey.

be assumed Kevin had knowledge of the negative capital account balance and Kevin never made an express disclosure before these matters came to Ramsey's attention. But this assumes a duty to disclose by Kevin in order for him to avoid a conclusion of equitable tolling until whenever the additional information happened to come to Ramsey's attention later, and reads out of the rule any requirement of diligence by Ramsey. The Appellants refer to certain cases relying on a duty to disclose, such as in <u>Crisman v. Crisman</u>, 85 Wn. App. 15, 22, 931 P.2d 163 (1997), arising from an agent's duty of loyalty to a principal, a relationship that did not exist here, but the Appellants never explain the basis of any affirmative duty to disclose by Kevin to Ramsey other than referencing their family relation. The Appellants refer to the summary judgment papers, where Kevin and Vicki argued that Ramsey before the transaction did not review any records or seek any accounting review. We need not decide whether Ramsey had any obligation to do so or whether Kevin had any affirmative duty to disclose in deciding that where that is the only evidence on the question, it does not allow a trier of fact to find that Ramey showed due diligence. Ramsey does not meet his burden of production to show a trier of fact could find equitable tolling through his exercise of due diligence. The trial court did not err in dismissing Ramsey's counterclaims on summary judgment.

IV

The Appellants argue the trial court erred in its amendment of its final judgment and the judgment was signed in violation of CR 54(f)(2). However, we decline to address these claims because the Appellants did not timely appeal the April 2023 final judgment.

V

The Appellants argue they should be awarded fees on appeal pursuant to RAP 18.1. Kevin, Vicki, and DWS also request fees on appeal pursuant to RAP 18.1, and argue we should award additional fees for opposing a brief that violated RAP 9.12.

RAP 18.1(a) provides that a party to an appeal may request recovery of "reasonable attorney fees or expenses" if the applicable law grants the party the right to recover. "A contract which provides for attorney's fees to enforce a provision of the contract necessarily provides for attorney's fees on appeal." Marine Enters., Inc. v. Sec. Pac. Trading Corp., 50 Wn. App. 768, 774, 750 P.2d 1290 (1988). Here, the Contract provides that "if any legal action or other proceeding is brought for the enforcement of this Agreement or because of an alleged breach or default, the party most prevailing shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding." Kevin, Vicki, and DWS remain the prevailing party and thus are entitled to an award of reasonable attorney fees and costs on appeal upon compliance with RAP 18.1. However, Kevin, Vicki, and DWS must segregate the work performed solely in defending the February 2020 summary judgment order. We decline to award the Appellants fees on appeal.

Kevin, Vicki, and DWS further request fees under RAP 9.12, citing <u>Green</u>. Because we did not resolve the dismissal of Ramsey's counterclaims pursuant to <u>Green</u>, we deny Kevin, Vicki, and DWS's request for fees under RAP 9.12.[16]

Affirmed.

_____
Birk, J.

WE CONCUR:

_____          _____
Colven, J.                                      Hazelrigg, ACJ

---

[16] The Appellants assign error to the trial court "awarding 'post-judgment' interest for over three years prior to the judgment." However, that assignment is not argued in its brief. Assignments of error not argued will not be considered. <u>In re Petition for Port of Seattle</u>, 80 Wn.2d 392, 399, 495 P.2d 327 (1972).